UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FABIAN A. MAKHANDA *and* QUINN MAKHANDA,

                                Plaintiffs,

                -against-

MARSHA M. WRIGHT *and* AG LETITIA JAMES,

                                Defendants.

**OPINION & ORDER**

25-cv-7639 (ER)

---

FABIAN A. MAKHANDA *and* QUINN MAKHANDA,

                                Plaintiffs,

                -against-

MARSHA M. WRIGHT, NEW YORK COUNTY FAMILY COURT, NEW YORK STATE UNIFIED COURT SYSTEM, *and* JOHN/JANE DOES 15,

                                Defendants.

25-cv-7651 (ER)

---

Ramos, D.J.:

Fabian A. Makhanda ("Fabian") and Quinn Makhanda ("Quinn"), who are appearing *pro se* and *in forma pauperis* ("IFP"), filed these two actions under 42 U.S.C. § 1983, alleging that Defendants violated their rights under federal and state law. *Makhanda v. Wright, et al.*, No. 25-cv-7639 ("*Makhanda I*"); *Makhanda v. Wright, et al.*, No. 25-cv-7651 ("*Makhanda II*"). Their claims arise out of proceedings that occurred in New York County Family Court. Although the Court did not issue summonses or order responses to the pleadings, an attorney with the New York State Attorney General's Office ("AG's Office") appeared in both matters. For the following reasons, the Court *sua sponte* dismisses both amended complaints.

I.    **BACKGROUND**

In the *Makhanda I* amended complaint, Plaintiffs name New York County Family Court Support Magistrate Marsha M. Wright and New York State Attorney General

Case 1:25-cv-07639-ER    Document 55    Filed 04/08/26    Page 2 of 10

Letitia James. *Makhanda I*, Doc. 19. In the *Makhanda II* amended complaint, Plaintiffs name Magistrate Wright, the New York County Family Court, the New York State Unified Court System ("UCS"), and "John/Jane Does 15." *Makhanda II*, Doc. 7.[1] Additionally, Plaintiffs have filed multiple motions asking that the Court take "judicial notice" of the Family Court record and to "enter" Family Court documents into the "federal record." *Makhanda I*, Docs. 17, 26, 30, 36, 39, 43; *Makhanda II*, Docs. 14–16, 29, 37. The following facts are drawn from the amended complaints and the Family Court documents that Plaintiffs provided.[2]

Plaintiffs, who reside in New Jersey, are twin siblings born in 1986. *Makhanda II*, Doc. 14 at 6; Doc. 7 at 2. On July 22, 2025, Fabian filed two petitions in the New York County Family Court, under Docket Nos. P-06302-25 and P06303-25, on behalf of himself and Quinn, seeking to establish paternity and receive retroactive child support. *Makhanda I*, Doc. 9 at 2–3; *Makhanda II*, Doc. 14 at 4. Magistrate Wright presided over a brief remote hearing on September 9, 2025, during which she informed Plaintiffs that the Family Court did "not have statutory authority under the Family Court Act to hear issues of paternity for adult children." *Makhanda II*, Doc. 37 at 7. She "suggest[ed]" that Plaintiffs consult with counsel "to determine the right court to go to. This sounds like it would be a Surrogate's Court issue, but it is outside of the realm of the Family Court." *Makhanda II*, Doc. 37 at 7. Thereafter, Magistrate Wright informed Plaintiffs that she was "going to dismiss both petitions" without prejudice for lack of jurisdiction. *Id.* That same day, Magistrate Wright issued an order dismissing the petitions on the ground that

---

[1] In *Makhanda II*, Plaintiffs filed two complaints labeled "first amended complaint" on January 14 and January 16, 2026, respectively. On January 29, 2026, the Court ordered that the "amended complaint" previously filed on September 23, 2025, Doc. 7, is the operative complaint because Plaintiffs did not obtain the consent of Defendants or the leave of the Court to file the two "first amended complaints." *Makhanda II*, Doc. 47.

[2] The Court quotes from Plaintiffs' submissions verbatim, and all spelling, grammar, and punctuation are as in the originals unless noted otherwise.

"the Family Court is a court of limited jurisdiction and lacks subject matter jurisdiction to establish paternity of adults (FCA sections 115 & 517)." *Makhanda II*, Doc. 14 at 4.

On September 19, 2025, Magistrate Wright issued Findings of Fact, explaining that: (1) Plaintiffs sought "to establish paternity . . . in favor of a long-deceased individual, Freddie Smith"; (2) the petitions failed to state a cause of action because the Family Court does not have subject matter jurisdiction over the issue of paternity for adults beyond the age of twenty-one; and (3) a child's "statutory right to parental financial support terminates by operation of law at age [twenty-one]." *Makhanda I*, Doc. 9 at 2–3. In addition, Magistrate Wright issued an amended order, also dated September 19, 2025, dismissing the petitions with prejudice. *Makhanda II*, Doc. 14 at 5. Language at the bottom of the amended order advised Fabian of his right to file "specific written objections" to a Family Court judge within 30 days. *Makhanda II*, Doc. 14 at 5.[3]

Plaintiffs filed written objections to Magistrate Wright's order of dismissal issued on September 9 and amended order of dismissal issued on September 19, arguing that: (1) there were "errors in the attendance" list; (2) she referred to Freddie D. Smith as the "[a]lleged [d]eceased," rather than "[d]eceased;" and (3) she concluded that they "failed to state a cause of action." *Makhanda II*, Doc. 14 at 8, 13. Family Court Judge Janet McFarland denied the objections, but remanded to Magistrate Wright to make the necessary corrections to the attendance list. *Id.* at 8. These two lawsuits followed.

Plaintiffs assert violations of their constitutional right to due process and access to the courts. *Makhanda I*, Doc. 19 at 2, 6; *Makhanda II*, Doc. 7 at 3–4. They further assert a violation of their right to equal protection because, they allege, the New York State Family Court Act Section 517 deprives adult children of the right to establish paternity

---

[3] On February 3, 2026, Plaintiffs submitted in the instant action another amended order of dismissal issued by Magistrate Wright, dated November 14, 2025. *Makhanda I*, Doc. 54 at 5; *Makhanda II*, Doc. 52. They claim that this document was not made available to them until January 14, 2026. *Makhanda I*, Doc. 54 at 3. The only difference Plaintiffs point out between this amended order of dismissal and the prior one is that this amended order "omits Docket No. P-06302-25." *Id.*

and seek retroactive child support. *Makhanda I*, Doc. 19 at 2, 6. They also assert violations of their rights under the Family Court Act and other state laws. *Id.* In addition, they allege violation of their rights pursuant to Title 42 U.S.C. Section 1983, civil action for deprivation of rights. *Id.* Plaintiffs seek declaratory and injunctive relief, and money damages. *Makhanda I*, Doc. 19 at 6; *Makhanda II*, Doc. 7 at 4.

Since filing the amended complaints, Plaintiffs have filed motions seeking other relief, including summary judgment and preliminary and permanent injunctive relief. *Makhanda I*, Docs. 45, 46; *Makhanda II*, Docs. 20–22, 35, 40–42.

On December 22, 2025, Assistant Attorney General Anjali Bhat filed a notice of appearance in both cases on behalf of the Defendants. *Makhanda I*, Doc. 21; *Makhanda II*, Doc. 9. In a letter motion filed on January 28, 2026, Bhat argues that the Court should deny Plaintiffs' motions, and either dismiss the actions *sua sponte*, or schedule a pre-motion conference in an anticipation of the AG's Office filing a motion to dismiss. *Makhanda I*, Doc. 47; *Makhanda II*, Doc. 43. Plaintiffs oppose the AG Office's submission. *Makhanda I*, Docs. 49, 50, 52, 53; *Makhanda II*, Docs. 46, 48, 50, 51. They assert, among other things, that: (1) Magistrate Wright is not entitled to judicial immunity because she acted in "clear absence of all jurisdiction," *Makhanda I*, Doc. 49 at 3; (2) Magistrate Wright had a "constitutional duty to transfer" their petitions, *Makhanda I*, Doc. 33 at 2; (3) they "cannot be expected to cure the [Family Court's] alleged jurisdictional deficiency," *id.*; and (4) any "argument suggesting [they] are required to appeal or otherwise correct the Family Court's error is legally incorrect. Plaintiffs are not required to seek appellate relief to trigger the court's ministerial duty," *id.*

## II.    LEGAL STANDARD

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.  *See* Fed. R. Civ. P. 12(h)(3).  While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).  But the "special solicitude" provided in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads enough factual details to allow the Court to draw the inference that the defendant is liable for the alleged misconduct.  In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions.  *Twombly*, 550 U.S. at 555.  After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief.  *Id.*

III.    DISCUSSION

A.  **New York State Attorney General Letitia James, UCS, New York State Family Court**

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568

F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original).  This immunity shields states from claims for money damages, injunctive relief, and retrospective declaratory relief.  *See Green v. Mansour*, 474 U.S. 64, 72–74 (1985).  "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted); *see also Caruso v. Zugibe,* 646 F. App'x 101, 104 (2d Cir. 2016).

Here, Plaintiffs sue New York State Attorney General Letitia James, who is an agent of New York State.[4]  *Stevenson v. De Blasio*, No. 21-cv-5065 (AT), 2022 WL 3445728, at *1 (S.D.N.Y. Aug. 17, 2022) (dismissing *sua sponte* claims asserted against AG James as barred by the Eleventh Amendment.).  They also sue the UCS and New York County Family Court.  The UCS "is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity," *Gollomp*, 568 F.3d at 368 (citation omitted), as are individual state courts.  *See Brown v. Astoria Federal Savings & Loan Association,* 444 F. App'x 504 n.1 (2d Cir. 2011) (summary order) (claims against New York Supreme Court barred by the Eleventh Amendment) (citing *Gollomp*, 568 F.3d at 368); *see also Murray v. Thompson*, No. 17-cv-7004 (VB), 2018 WL 5113955, at *4 (S.D.N.Y. Oct. 19, 2018) (a New York Family Court is an arm of the State of New York and is entitled to Eleventh Amendment immunity).

---

[4] Additionally, in this Circuit, the "personal involvement of defendants in an alleged constitutional deprivation[] is a prerequisite to an award of damages" under Section 1983.  *See Spavone v. New York State Department of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted). Plaintiffs do not allege that AG James was personally involved in violating their rights.  To the extent Plaintiffs named AG James in connection with Plaintiffs' equal protection challenge to the Family Court Act, the state courts have held that the statutory provision at issue is constitutional.  *See Winkler v Sherman*, 28 N.Y.S.3d 359, 359–60, 2016 WL 1137191 (1st Dep't, Mar. 24, 2016) (holding that the plaintiff failed to demonstrate that Section 517 of the Family Court Act was unconstitutional to the extent that it "placed a limitation on the time when a child could seek a paternity test, given the state's legitimate interest in securing support for a child from those legally responsible.  The limitations period is not arbitrary and capricious in that by age [twenty-one], a parent may not be legally responsible" for child support).

Congress has not abrogated the states' immunity for claims under Section 1983. *See Dube v. State University of New York*, 900 F.2d 587, 594 (2d Cir. 1990). And the State of New York has not waived its immunity to suit in federal court. *See Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 40 (2d Cir. 1977). The Court therefore dismisses Plaintiffs' Section 1983 claims against AG James, the UCS, and the New York County Family Court, under the doctrine of Eleventh Amendment immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).[5]

### B. Support Magistrate Wright

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 11–12; *see also Bliven,* 579 F.3d at 209–10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v.*

---

[5] Additionally, the New York County Family Court is not a "person" for purposes of Section 1983 liability and not a proper defendant in a Section 1983 action. *See Zuckerman v. Appellate Divison, Second Department Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (court not a "person" within the meaning of Section 1983).

*Sparkman,* 435 U.S. 349, 356 (1978). The Supreme Court has expressly applied the doctrine of judicial immunity to actions brought pursuant to Section 1983. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967).

Notwithstanding Plaintiffs' assertions to the contrary, this immunity extends to judges and support magistrates who sit in Family Court. *See United States v. Bommer*, 613 F. Supp. 3d 712, 719 (W.D.N.Y. 2020) (dismissing claims against both a judge and support magistrate on the basis of judicial immunity) (citing *Parent v. New York*, 786 F. Supp. 2d 516, 533–34 (N.D.N.Y. 2011)); *Sims v. Kaufman*, No. 23-cv-7927 (LTS), 2024 WL 757338, at *2 (S.D.N.Y. Feb. 14, 2024) (dismissing claim against a support magistrate, on judicial immunity grounds, that adjudication of a child support matter in the absence of a paternity test violated due process).

Because Plaintiffs sue Magistrate Wright for "acts arising out of, or related to, individual cases before" her, she is immune from suit for such claims for damages. *Bliven*, 579 F.3d at 210. Plaintiffs do not allege that a declaratory decree was violated or that declaratory relief was unavailable, and thus there is no basis for injunctive relief.[6] Although Plaintiffs claim that they are not required to appeal, *Makhanda I*, Doc. 33 at 2, "[f]ederal district courts do not supervise the state courts." *Hahn v. New York*, No. 19-cv-8747 (CM), 2019 WL 5209637, at *3 n.3 (S.D.N.Y. Oct. 11, 2019). Litigants in Family Court can seek review—*as Plaintiffs did*—by a Family Court Judge, of a Support Magistrate's rulings; if unsuccessful, they may appeal a Family Court Judge's decision in the state appellate courts. *See* N.Y. Family Court Act §§ 439(e), 1112; *see generally, Berlin v. Meijia*, No. 15-cv-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*,

---

[6] There is no authority supporting Plaintiffs' assertion that Magistrate Wright had a "constitutional duty" to transfer their petitions. *Makhanda I*, Doc. 33 at 2. She suggested that their claims might be raised in Surrogate's Court, and advised them to seek legal advice, something that she, as the presiding judge, could not provide.

No. 17-3589 (2d Cir. Apr. 18, 2018); *Lembert v. Woods*, No. 18-cv-07649 (GBD) (S.D.N.Y. Sept. 5, 2018) (dismissing claims against Family Court judge on immunity grounds and noting that, "[e]ven if a judge acts maliciously, a litigant's remedy is to appeal, not to sue the judge.") (quoting *Esposito v. New York*, No. 07-cv-11612 (SAS), 2008 WL 3523910, at *10-11 (S.D.N.Y. Aug. 8, 2008)).

The Court therefore dismisses the claims against Magistrate Wright under the doctrine of judicial immunity because Plaintiffs seek monetary relief from a defendant who is immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, *see* § 1915(e)(2)(B)(i); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute]."

### C. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997))).

### D. Leave to Amend

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile.

9

*See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Because the defects in Plaintiffs' complaints cannot be cured with an amendment, the Court declines to grant Plaintiffs leave to amend their complaints.[7]

## IV.    CONCLUSION

For the reasons set forth in this order, the Court dismisses these actions *sua sponte* on immunity grounds, and therefore as frivolous, and for failure to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).  The Court declines to exercise supplemental jurisdiction of any state-law claims Plaintiffs may be asserting.  *See* 28 U.S.C. § 1367(c)(3).

All pending motions are denied as moot.  The Clerk of Court is respectfully directed to terminate all pending motions in both matters and close the cases.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:  April 8, 2026

New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

---

[7] The Court dismisses these actions *sua sponte*, meaning on its own, and not in response to the Defendants' motion.  *See Russo v. Wells Fargo Bank,* No. 25-cv-2804, 2025 WL 2052258, at *1–2 (E.D.N.Y. July 22, 2025) (explaining that *sua sponte* dismissal means that the court is dismissing "on its own," and not in response to a motion by either party).  Claims subject to dismissal on immunity grounds are frivolous for purposes of Section 1915, and subject to *sua sponte* dismissal by the Court.  *Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) (holding that because the defendant, a state-court judge, was "clearly entitled to judicial immunity, the district court did not err in *sua sponte* dismissing the claims against her as frivolous"); *Woods v. Rondout Valley Central School District Board of Education*, 466 F.3d 232, 238 (2d Cir. 2006) (recognizing that "lower courts may raise the issue of Eleventh Amendment immunity *sua sponte*").